FULMER *v*. STATE OF INDIANA.

[No. 30,684. Filed October 19, 1967. Rehearing denied December 21, 1967.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Raymond I. Klagiss,* Deputy Attorney General, for appellee.

LEWIS, J.—A jury in Marion County Criminal Court, Division Two, convicted Kenneth Clayton Fulmer of Murder in the Second Degree on an indictment charging him with Murder in the First Degree. The issues formed at the trial were on the indictment with a plea of not guilty and a second affirmative plea of not guilty by reason of insanity. Fulmer complains here of the following errors allegedly committed during his trial:

"1. That the verdict of the jury is not sustained by sufficient evidence.
"2. That the verdict of the jury is contrary to law.
"3. That the court erred in allowing admissions of the defendant to be introduced prior to the establishment of the corpus delicti of the crime."

The fourth assignment of error will be treated later in this opinion.

On September 21, 1964, Fulmer and an accomplice planned to rob a taxicab driver. In pursuing such plans, they went to

Woodruff Place in the City of Indianapolis, memorized a street address, and returned to the center of Indianapolis; in particular, to the Bus Terminal Building. The appellant then hailed a taxicab and directed the driver to take him to the address in Woodruff Place. At the time he arrived at the address the appellant drew a .25 caliber automatic weapon and instructed the victim driver that it was a holdup and demanded the cash. The driver turned and faced the appellant and as he turned caused the lights in the interior of the cab to be turned on. A struggle ensued with the gun being discharged. The driver was mortally wounded. The appellant Fulmer fled the scene, but his flight was observed by several witnesses. The accomplice assisted the appellant by picking him up after the ill-fated robbery and appellant went to the home of a friend. The friend later testified that Fulmer made inconsistent statements as to whether or not he had participated in the robbery of the cab driver.

There was other evidence that appellant had made admission against interest to the effect that he had "shot a guy." Appellant himself testified to facts substantially as above set out. Extrajudicial statements should not be admitted into evidence until there is proof of the corpus delicti of the offense charged. Generally speaking, a trial judge in his discretion controls the order of proof. *Hart* v. *State* (1942), 220 Ind. 469, 44 N. E. 2d 346. However, this general rule is limited by a line of respectable authority to the effect that the corpus delicti must be proven before the extrajudicial confessions and statements are received. *Dennis* v. *State* (1951), 230 Ind. 210, 102 N. E. 2d 650, quoting with authority from *Gaines* v. *State* (1921), 191 Ind. 262, 132 N. E. 580, *Hunt* v. *State* (1939), 216 Ind. 171, 23 N. E. 2d 681.

Prior to the time any extrajudicial statements were admitted here, we found evidence to be substantially as follows: A taxicab was left standing in Woodruff Place with the motor running and two doors open; the victim was lying beside it; the victim's blood was splashed upon the cab; a spent .25 cali-

ber casing was found in the vehicle; several witnesses testified they saw a person flee from the cab after having heard a noise similar to a gun discharging; a deputy coroner testified that the victim died as the result of a bullet lodged in the right lung. It is our opinion that the foregoing posture of the evidence was sufficient showing of the corpus delicti of the offense charged for the Court to admit out-of-court statements.

"Proof of the corpus delicti means proof that the specific crime charged has actually been committed by someone." *Dennis* v. *State,supra,* quoting with authority from *Parker* v. *State* (1950), 228 Ind. 1, 88 N. E. 2nd 556.

Appellant's next contention concerns the admission of certain evidence over objection, which evidence concerned other offenses separate and independent from the offense charged. We include here a part of the record so as to have a thorough understanding of appellant's contention on this point:

"4. Error of law occuring at the trial in this:

'That the Court erred in allowing admissions of the defendant as a part of the admissions to the alleged crime."

"At the trial the State of Indiana, in its case in chief called one James Dyer to the stand and he was permitted to answer the following questions over objection of defendant's counsel:

'Q. Now, going to the defendant's sanity, I will ask you, Mr. Dyer, whether you were with him about two months before October 29, 1963 at the Stokely Van Camp place on South East Street?

'MR. BUTLER: To which we will object. It is irrelevant, has no material bearing on the case being tried by the jury today.

THE COURT: Overruled. Answer yes or no.

'A. Yes, sir.

'Q. What did you and the defendant do, if anything, at this time?

'MR. BUTLER: We object as having no material bearing on the case being tried by the court and jury today.

'THE COURT: Overruled.

'A. We broke in.

'Q. I will ask you, Mr. Dyer, whether at or about that same time were you with the defendant and a Bob Pearson at a house at 733 Sanders Street?

'MR. BUTLER: To which we object as having no bearing on the case being tried by the court and jury today.

'THE COURT: Want to make an offer to prove, Mr. Breskow, quietly?

'MR. BRESKOW: Have you ruled on the objection?

'THE COURT: Not till I get an offer to prove.

'OUT OF HEARING OF JURY:

'MR. BRESKOW: If this witness were permitted to answer, his answer would be that he and the defendant and Bob Pearson broke into a house at 733 Sanders Street and got a T.V. set and an archery set.

'THE COURT: For what purpose?

'MR. BRESKOW: For the purpose of going to the sanity at the time.

'THE COURT: Alright [sic], objection overruled.

'IN THE HEARING OF THE JURY:
'THE COURT: Read the question.

'THE REPORER READ THE LAST QUESTION.

'A. Yes, sir.

'Q. What, if anything, did you do at that time?

'A. We broke into the house.

'MR. BUTLER: We object, Your Honor, and move the answer to be stricken.

'THE COURT: The answer will go out for the purpose of an objection.

'MR. BUTLER: I object. It is immaterial to the case being tried by court and jury today. It is prejudicial to the rights of this defendant and we ask the judge to withdraw the submission of the case to the jury and declare a mistrial.

'THE COURT: Overruled.

'Q. What, if anything, did you or the three of you do inside the house?

'MR. BUTLER: To which we object for the same reasons, and ask the Court to note the same objection to each of the questions concerning this particular episode.

'THE COURT: Overruled.

'A. We tore the house up pretty bad, looking for money. We could not find any. We stole a rifle.

'Q. And did you and this defendant, about the same time, go to the Northwood Junior High School in Marion County, Indiana?

'A. Yes, sir.

'Q. What, if anything did you and the defendant do at that time and at that place.

'MR. BUTLER: To which we interpose the same objection heretofore given and ask our objection be made a part of the record. We also request there be a mistrial declared and withdraw submission of the case to the jury.

'THE COURT: Overruled.

'A. We broke into it.

'Q. What, if anything, did you do inside, you or the defendant or both of you?

'MR. BUTLER: Same objection will be entered as a matter of record, Your Honor.

'THE COURT: Overruled.

'A. We broke in the coke machine and into the phones.

'Q. Can you speak of now, Jim?

'A. Yes, sir.

'Q. At or about the same time, did you and the defendant and a boy named Malcom go to a church located on Sanders Street, one block east of Wright Street, Indianapolis, Indiana?

'A. Yes.

'MR. BUTLER: We object: It has no bearing. We make the same request to withdraw submission of the case to the jury and declare a mistrial.

'THE COURT: Overruled, authority *Kiefer* v. *State* 169 Northeastern, Second, 723, point 5.

'MR. BUTLER: The objection is given basically on the same case, Your Honor. Sorry, I don't see it the same way.

'THE COURT: Overruled.

'Q. Do you understand the question?

'A. Yes, I said we broke into the church.

'Q. What, if anything, did you do inside, you and the defendant.

'MR. BUTLER: We object for the reason heretofore given and made a part of the record. We ask it be withdrawn from the jury and a mistrial be declared.

'THE COURT: Overruled.

'A. We broke in the coke machine and tried to take the safe. It was too heavy to carry."

Generally speaking we reaffirm the law in a criminal prosecution; that if there is evidence of the defendant committing another crime, separate and independent from the offense charged, even though it is similar, it is irrelevant and inadmissible. *State* v. *Robbins* (1943), 221 Ind. 125, 46 N. E. 2d 691

*Layton* v. *State* (1966), 248 Ind. 52, 221 N. E. 2d 881, concerned one exception to the above rule; that being, where the other crime tends to establish the identity of the person who committed the crime at issue. During the trial evidence of the defendant's other crimes were introduced; however, the other crimes didn't, in reality, tend to prove the identity of the perpetrator. In reversing the Trial Court, this Court said:

"This court has previously held:

'The general rule is that one crime cannot be proved in order to establish another distinct crime even though they be of the same kind. Such evidence is highly prejudicial. . . . There are certain exceptions to this general rule. Among these are cases where a crime has certain peculiar characteristics connected with its commission so that it very reasonably identifies the person involved in the commission. . . ." Quoting with authority from *Loveless* v. *State* (1960), 240 Ind. 534, 166 N. E. 2d 864.

The opinion concludes by stating that since these other crimes only show that the appellant previously committed armed robbery and are void of peculiar characteristics connected with the crime at issue, they do not fit into any one of the exceptions to the general rule. It was held reversible error to admit them into evidence.

The case at bar concerned a different exception to the general rule; that being, where a plea of insanity is entered as a defense to a homicide. Wigmore on Evidence, Vol. II, § 228, states the following rule concerning the admission of other acts when a plea of insanity is entered:

> "The first and fundamental rule, then, will be that any and all conduct of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity, it may indicate sanity. It will certainly throw light one way or the other upon the issue."

In interpreting this passage it would appear that anything is admissible into evidence when a plea of insanity is entered by the defense. The exclutionary rules, and the protection to the defendant afforded by them are relaxed. Highly prejudicial and/or inflammatory matter which, in reality, gives no aid to the jury in their task is admitted. Obviously this is a dangerous situation to say the least with the defense having to enter its plea and then take its chances as to what an overzealous prosecutor may present.

The Indiana law in this area may be stated thusly:

> "When insanity is an issue in a criminal cause, evidence of relevant acts and conduct of the person involved during his life is admissible." *Kiefer* v. *State* (1960), 241 Ind. 176, 169 N. E. 2d 723, quoting with authority from *Baker* v. *State* (1921), 190 Ind. 385, 129 N. E. 468, *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769.

It will be noted that the Indiana law uses the words, *relevant* acts and conducts. (our emphasis) In looking to other sources on this subject, the following passages are helpful.

"Considerable latitude is allowed by the courts in admitting evidence which has a tendency to throw a light on the mental condition of the defendant at the time of the commission of the crime, provided the proof tends to prove or disprove the issue involved. Every act of the defendant's life relevant to the issue is admissible in existence when the defense of insanity, general or partial, is set up." 29 Am. Jur. 2d, § 353.

"A broad range is allowed . . . subject only to the limitation that the acts inquired about must throw some light on the question of his sanity at the time of the crime." 1 Modern Trial Practice, ch. 5, p. 124, § 123.

In these passages, as well, the language of "relevant" and "must throw some light on the question" is used.

In *Coffey* v. *State* (1943), 244 Ala. 514, 14 So. 2d 122, this question was specifically dealt with. While that Court stated wide latitude is allowed the Trial Court, they also concluded that the broad expressions had been modified in a previous case (*Mitchell* v. *Parker* (1932), 224 Ala. 149, 138 So. 832) by saying, "Of course, this expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry." Also, the following statement from *George* v. *State* (1941), 240 Ala. 632, 200 So. 602, was set out in *Coffey* v. *State, supra*:

"Evidence to show insanity is not confined to evidence of the mental condition of the accused at the instant of the act, though whatever facts are adduced must tend to show the mental state at that moment."

In the case at bar, after reviewing the evidence elicited by the prosecuting attorney from Mr. Dyer concerning other acts of the appellant while in the company of Dyer and Bob Pearson, we do conclude that this story of the anti-social and unconventional conduct of the appellant may have been relevant to show the mental condition of the appellant. We are unable to determine whether this evidence was offered by the State of Indiana in an effort to show that the appellant was not insane

at the time of the commission of the crime charged in the indictment, or that he was just an anti-social individual.

Under the doctrine of *Kiefer* v. *State, supra,* we are not in a position here to hold that the evidence elicited by the prosecuting attorney and covered by specification of error No. 4 was not relevant under the plea of not guilty by reason of insanity.

The trial judge had all of the evidence and was in a position to determine what evidence was relevant to the issue of insanity. In the examination of the record presented and the argument presented on appeal, we do not here make a finding contrary to that of the trial judge. We do, however, reiterate it is the law of Indiana that under a plea of not guilty by reason of insanity, the general rule is that there is great latitude in admitting evidence of other conduct of the defendant, but it is limited to the extent that such conduct must be *relevant* to the issue of insanity. (our emphasis) *Kiefer* v. *State, supra; Baker* v. *State, supra.*

In *Kiefer* v. *State, supra,* at one point in the decision, this Court omitted the word "relevant"; but, we are confident this is a scrivener's error, and when we examine that opinion and realize that the Court relied on *Baker* v. *State, supra,* we do here re-affirm the law to be that the acts and conduct of the person involved, to be admissible, must be relevant under the issues formed. It is always difficult to determine relevancy and perhaps the explanation set out in 29 Am. Jur. 2d, § 353, *supra,* is helpful, when the terminology of "throw a light on the mental condition of the defendant" is used.

The Trial Court did everything possible to confine the questioned evidence to a consideration and determination of the defendant's sanity or insanity. The Court gave the defendant's requested Instruction No. 23 among its final instructions, which reads as follows:

"The Court instructs you that any evidence introduced in this cause concerning defendant's participation in any other crimes not connected with the indictment shall be con-

sidered by you only for the purpose of determining the question of defendant's sanity or insanity at the time of the commission of the offense alleged in this indictment." [Court's Instruction No. 38 7/8]

We do not find error in the ruling of the Trial Court on the admissibility of the evidence encompassed in appellant's specification No. 4.

The evidence presented by appellee was sufficient to prove each and every material allegation of the indictment. The verdict of the jury of Second Degree Murder is sustained by ample evidence and is not contrary to law. The appellant in this case was afforded a fair trial; the defense presented for him was professional and skillful.

The judgment of the Trial Court is affirmed.

Hunter, C. J., Arterburn and Mote, JJ., concur.

Jackson, J., Dissents without opinion.

NOTE.—Reported in 230 N. E. 2d 307.